COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, Fulton and Lorish
Argued by videoconference

**PUBLISHED**

LKQ CORPORATION AND
  CCMSI

v.        Record No. 1173-22-4

JOSEPH GALARRETA MORALES

OPINION BY
JUDGE RANDOLPH A. BEALES
AUGUST 1, 2023

FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

(Dennis Boyd Cook; Midkiff, Muncie & Ross, P.C., on brief), for
appellants. Appellants submitting on brief.

Joseph Galarreta Morales (Jan F. Hoen; Hampton Injury Law PLC,
on brief), for appellee.

LKQ Corporation and its claims administrator, CCMSI, (collectively "LKQ") appeal from a

decision of the Workers' Compensation Commission that held that Joseph Galarreta Morales

("claimant") was not required to cooperate with vocational rehabilitation services that were

inappropriate for a disabled claimant. In its first assignment of error, LKQ argues that the

"Commission erred in finding that [LKQ] failed to meet their burden to prove that vocational

rehabilitation was appropriate" and that the Commission erred by declining to find that claimant

"failed to cooperate with vocational rehabilitation without justification." LKQ also assigned error to

the Commission's determination that claimant "was entitled to a reinstatement of temporary total

disability benefits" following what LKQ contends was claimant's unjustified failure to cooperate.

I. BACKGROUND

In July 2015, claimant was employed with LKQ as a driver delivering automobile parts. On

the night of July 30, 2015, claimant was driving a delivery route for LKQ when his 26-foot box

truck left the roadway and rolled onto its driver's side. Claimant sustained compensable injuries to his neck, left shoulder, and lower back. Between August 2015 and August 2020, claimant saw a variety of physicians. Due to the changing status of his injuries, claimant's physicians periodically gave him light-duty work restrictions or took him completely off of a work-duty status for certain periods of time. On March 7, 2016, claimant filed a claim for benefits with the Commission in connection with his injuries. On December 28, 2016, the deputy commissioner awarded claimant medical benefits and temporary total disability for three periods. The most recent period began on March 1, 2016, and continued without a definite end date.

On July 30, 2020, claimant's treating physician, Dr. Sunjay Berdia, released him to light-duty work with restrictions "until surgery." Claimant reported to the Commission that he underwent surgery by Dr. Berdia on August 18, 2020. On August 28, 2020, Dr. Berdia determined that claimant would be unable to return to work until September 28, 2020, and noted that he would see claimant again on September 25, 2020. The Commission found that the August 28, 2020 note by Dr. Berdia, which took claimant out of work, was the last statement in the record of claimant's work status.

The following year, on August 3, 2021, LKQ filed an application to terminate claimant's temporary total disability benefits alleging that he "refused vocational rehabilitation from July 7, 2021 through August 3, 2021." In support of its application, LKQ produced a letter from Carlos Encinas, a vocational case manager, to claimant dated July 22, 2021, which states in relevant part:

> With this letter allow me to advise you of a vocational appointment for Thursday 7/28/2021 at 11:00. I have attempted to reach you via telephone unsuccessfully and no possibility of leaving voice mail message.
>
> At this time, we will discuss the job search process and I will inform you regarding any job interviews. As part of this process I will also assist you in completing job application, if appropriate and whenever

possible.  Please have with you any record you may have on your employment history no more than 10-15 years.[1]

LKQ's application to terminate benefits also included a letter from Encinas which stated that he had made "repeated attempts to contact" claimant on July 7, 2021, and attempted to contact claimant again on July 8, 2021.  On August 4, 2021, claimant replied to Encinas's July 22, 2021 letter.  In the reply letter, claimant stated that he would meet with Encinas after Encinas agreed to several pre-conditions, such as the reimbursement of certain medical expenses and the providing of copies of reports Encinas would prepare following the meeting.

Following a hearing on LKQ's application to terminate claimant's benefits, the deputy commissioner released an opinion on December 30, 2021.  The deputy commissioner found that claimant's August 4, 2021 reply letter "setting forth pre-conditions to his cooperation with the vocational rehabilitation process" constituted an unjustified refusal to engage in vocational rehabilitation services under Code § 65.2-603(B).  The deputy commissioner then suspended claimant's award of temporary total disability benefits effective August 6, 2021.

Claimant filed a request for review with the Commission.  On July 11, 2022, a majority of the Commission reversed the decision of the deputy commissioner and reinstated claimant's temporary total disability benefits.  The Commission found that LKQ "failed to meet [its] burden to prove vocational rehabilitation was appropriate."  In support of its finding, the Commission found that the deputy commissioner "overlooked the August 28, 2020 form taking [claimant] out of work" and that there "was no evidence [that he] was released to light duty work at the time vocational rehabilitation was offered."  LKQ now appeals to this Court.

---

[1] LKQ's application also included a letter from Encinas to claimant on the same date that communicated a substantially similar message in Spanish.

II. ANALYSIS

A. Standard of Review

On appeal, the appellant bears "the 'burden of showing' that the Commission committed 'reversible error.'" *Jones v. Crothall Laundry*, 69 Va. App. 767, 774 (2019) (quoting *Burke v. Catawba Hosp.*, 59 Va. App. 828, 838 (2012)); *see Humphries v. Newport News Shipbuilding & Dry Dock Co.*, 183 Va. 466, 476 (1945) ("The finding of the Industrial Commission is presumed to be correct and the burden is on appellant in this court to point out the error committed by the Commission."). "[T]he full commission is the factfinder for commission proceedings." *Meidan, Inc. v. Leavell*, 62 Va. App. 436, 442 (2013). As such, "the Commission's factual findings are 'conclusive and binding' if 'supported by credible evidence.'" *Jones*, 69 Va. App. at 774 (quoting *Layne v. Crist Elec. Contractor, Inc.*, 64 Va. App. 342, 350 (2015)); *McCaskey v. Patrick Henry Hosp.*, 225 Va. 413, 415 (1983); *see Carrington v. Aquatic Co.*, 297 Va. 520, 522-23 (2019) ("The Commission's determinations of fact are conclusive and binding on appeal."). "This deference to the Commission's factfinding necessarily requires that we . . . construe the evidence in the light most favorable to the prevailing parties before the Commission." *Jeffreys v. Uninsured Employer's Fund*, 297 Va. 82, 87 (2019). However, this Court reviews questions of law *de novo*. *Rusty's Welding Service, Inc. v. Gibson*, 29 Va. App. 119, 127 (1999) (*en banc*).

"Whether the employee unjustifiably has refused to cooperate with vocational rehabilitation services is a question of fact to be determined from the totality of the evidence." *Anderson v. Anderson*, 65 Va. App. 354, 362 (2015). Also, whether a claimant is disabled is a question of fact. *See Great Atl. & Pac. Tea Co. v. Robertson*, 218 Va. 1051, 1053, 1055 (1978); *see also Georgia Pac. Corp. v. Dancy*, 17 Va. App. 128, 133-34 (1993) (affirming the Commission's finding that the claimant "continued to be totally disabled" because that finding was supported by credible evidence).

What constitutes "reasonable and necessary vocational rehabilitation services" authorized by Code § 65.2-603(A)(3), as applied to a particular claimant's case, is a mixed question of law and fact. *See City of Salem v. Colegrove*, 228 Va. 290, 293 (1984); *Yeargain v. Daniel Int'l*, 9 Va. App. 82, 84 (1989). When reviewing whether certain vocational rehabilitation services are appropriate for a claimant, this Court will, as with all mixed questions of law and fact, "review the legal principles *de novo* but show great deference to the Commission's direct and inferential factfinding." *See Jeffreys*, 297 Va. at 95.

### B. Whether Claimant Refused Appropriate Vocational Rehabilitation

On appeal, LKQ argues that claimant "failed to cooperate with vocational rehabilitation" that was appropriate for him and that he did so without justification. Generally, Code § 65.2-603(A)-(B) requires a claimant to cooperate with "reasonable and necessary vocational rehabilitation services" offered by his employer. As summarized by this Court, "[a]fter an award of benefits, an employer owes a duty to an injured employee to provide 'reasonable and necessary vocational rehabilitation services.'" *Anderson*, 65 Va. App. at 361 (quoting Code § 65.2-603(A)(3) ("The employer shall also furnish or cause to be furnished, at the direction of the Commission, reasonable and necessary vocational rehabilitation services.")). In turn, "[o]nce an employer provides such services, an unjustified refusal of the employee to accept the services 'shall bar the employee from further compensation until such refusal ceases.'" *Id.* at 362 (quoting Code § 65.2-603(B)). Also, an "employer shall not be required to furnish, or cause to be furnished, services under this subdivision to any injured employee not eligible for lawful employment." Code § 65.2-603(A)(3).

Ordinary vocational services are generally inappropriate for a totally disabled employee. *See id.* This Court has repeatedly cited and proceeded under the Commission's well-established rule that an "employee has no obligation to work with vocational rehabilitation until [he or] she

is medically released to return to selective employment." *Liz's Blue Diamond, Inc. v. Rico*, No. 1943-98-1, slip op. at 5-6 (Va. Ct. App. June 1, 1999) (alteration in original) (quoting *Gardner v. Legum Home Health/Home I.V. Care & Nutritional Svc.*, 74 O.W.C. 97 (Apr. 19, 1995)); *Food/Bev Serv-Crystal City v. Al-Boarab*, No. 0215-17-4, slip op. at 8 (Va. Ct. App. Aug. 8, 2017) (same); *see also U.S. Auto. Mfg. v. Mauice Gordon*, No. 0633-97-4, slip op. at 3-4 (Va. Ct. App. Aug. 26, 1997).[2]  Indeed, in *Homescapes, Ltd. v. Anderson*, No. 2536-10-2, slip op. at 4 n.2 (Va. Ct. App. Aug. 9, 2011) (quoting *Gardner*, 74 O.W.C. at 99), this Court requested argument from counsel to determine, in light of this rule, whether the claimant had been released to work.

Here, the Commission has found that claimant was totally disabled.  Once an award has been entered declaring that a claimant is disabled, the burden is on the employer to show that the effects of the claimant's injury have dissipated and that the claimant is no longer disabled as a result of his compensable injury.  *See Rossello v. K-Mart Corp.*, 15 Va. App. 333, 335 (1992) ("In an application for review of an award on the ground of a change in condition, the burden is on the party alleging such change to prove his allegations by a preponderance of the evidence." (quoting *Pilot Freight Carriers, Inc. v. Reeves*, 1 Va. App. 435, 438 (1986))); *Celanese Fibers Co. v. Johnson*, 229 Va. 117, 120 (1985).  Here, LKQ has failed to show that claimant is no longer disabled.  Indeed, LKQ did not enter any medical evidence into the record that would show that claimant is no longer disabled.  In fact, LKQ acknowledges that "at the time vocational rehabilitation efforts were commenced, the Appellee [claimant] did not have medical authorization to return to work."  The Commission found "no evidence" that claimant was no

---

[2] "Although not binding precedent, unpublished opinions can be cited and considered for their persuasive value." *Castillo v. Loudoun Cnty. Dep't of Fam. Servs.*, 68 Va. App. 547, 572 n.7 (2018) (quoting *Otey v. Commonwealth*, 61 Va. App. 346, 350 n.3 (2012)); *see also* Rule 5A:1(f).

longer disabled, and indeed, found that "[t]he only contemporaneous evidence on file with the Commission took him completely out of work." Consequently, LKQ has failed to show that claimant is no longer disabled. *See Justis v. Young*, 202 Va. 631, 632 (1961) ("We have many times pointed out that on appeal the judgment of the lower court is presumed to be correct and the burden is on the appellant to present to us a sufficient record from which we can determine whether the lower court has erred in the respect complained of. If the appellant fails to do this, the judgment will be affirmed.").

Nevertheless, LKQ argues that claimant's disability status is not dispositive here. LKQ contends that a mere assessment of a claimant's potential to return to work is appropriate even if the claimant is totally disabled. To support this position, LKQ relies heavily on the Commission's decision in *Gardner*, 74 O.W.C. 97. The Commission in that decision acknowledged that a claimant "has 'no obligation to work with vocational rehabilitation' until she is medically released to return to selective employment." *Id.* (quoting *Gibson v. Freeman Decorating Co.*, VWC No. 144-17-57 (Feb. 26, 1992)). In *Gardner*, the Commission then went on to find that a minimally intrusive assessment of a claimant's potential to return to work could be appropriate in certain circumstances despite a claimant's disability. *Id.* For instance, the Commission found that where the claimant had been on an open award for temporary total disability for an injury that occurred over four years ago, and "[w]here, as in the present case, the employer continues to pay wage loss indemnity benefits on a regular basis, the employer has a right to minimally intrusive evaluations of the employee in order to attempt [to] relieve its burden of future compensation." *Id.* Specifically, the Commission found that for such a disabled employee, "the employer is entitled to have the benefit of advice from a vocational consultant who has met with and assessed the employee regarding her potential for returning to work." *Id.* The Commission described this assessment as "meeting with and providing background

information to a vocational consultant." *Id.* However, the Commission in *Gardner* clearly distinguished an assessment from "job search or [other] vocational rehabilitation efforts." *Id.* LKQ relies on the Commission's decision in *Gardner*, and argues that, just as the disabled employee in *Gardner* unjustifiably failed to cooperate with an assessment, claimant here has likewise unjustifiably failed to cooperate with an assessment. *See id.*

What LKQ construes as a mere assessment of claimant here is what LKQ described as the "vocational appointment" that was scheduled for July 28, 2021. LKQ, through its vocational consultant, Carlos Encinas, had instructed claimant to attend that appointment, and because claimant refused to do so until certain conditions were met, LKQ contends that claimant unjustifiably refused vocational rehabilitation services. This Court is, of course, not bound in any way by the Commission's decision in *Gardner* although we can consider it as persuasive authority. *Anderson*, 65 Va. App. at 365 n.4 ("We note that, although they are often persuasive, 'decisions [of the Commission] are not binding authority on this Court.'" (alteration in original) (citation omitted)). However, if LKQ were correct that the "vocational appointment" here resembled the assessment that was at issue in *Gardner*, then LKQ would have a more persuasive argument. *See* Linda D. Slough, *Virginia Practice Series: Virginia Workers' Compensation* § 21:7 (2022-2023 ed.) ("[A] claimant is required to meet with the vocational rehabilitation counselor to allow [an] assessment of the claimant's potential for returning to work."). Nevertheless, under the Commission's own standard in *Gardner* (upon which LKQ relies), the "vocational appointment" at issue here was not a mere assessment.

The assessment described in *Gardner* explicitly excluded requirements that a claimant engage in "job search" efforts, yet those efforts are exactly what LKQ demanded here. In his July 22, 2021 letter, Encinas stated that the purpose of the "vocational appointment" was to "discuss the job search process," during which Encinas would "inform" claimant "regarding any

- 8 -

job interviews." In addition, Encinas would "assist [claimant] in completing job application[s], if appropriate and whenever possible." Encinas also asked that claimant bring a copy of his employment history going back "no more than 10-15 years."

The July 22, 2021 letter plainly communicates an intent to have claimant engage in job search efforts. This was not a minimally intrusive assessment of claimant's work capacity or potential to return to work, and it was not a simple attempt to obtain claimant's background information. The letter never states that the purpose of the appointment is to assess claimant's potential to return to work. Instead, the stated purpose is to "discuss the job search process." On its face, the letter communicates an attempt to quickly begin vocational rehabilitation efforts and find claimant a job while he was still totally disabled—and *not* medically released to return to work.

A majority of the Commission, as factfinder, found that requiring claimant to engage in job search efforts was the purpose of the vocational appointment: "Encinas' letters described more than an assessment. He intended to begin job search services." In addition, the Commission found that claimant (still being totally disabled) had not "failed to cooperate with vocational rehabilitation without justification." The Commission's findings of fact are conclusive and binding upon us if credible evidence exists in the record to support those findings. *McCaskey*, 225 Va. at 415; *Anderson*, 65 Va. App. at 362. Furthermore, the Commission found that LKQ "failed to meet [its] burden to prove vocational rehabilitation was appropriate for the claimant." Indeed, the job search services offered here were not appropriate for claimant because, according to the evidence in the record on appeal before us and according to the Commission, as factfinder, he was totally disabled at the time the services were offered. *See* Code § 65.2-603(A)(3); *see also* Slough, *supra*, § 21:7 ("A claimant cannot be required to engage in job search efforts until he is released to return to work.").

The evidence in the record, and the inferences drawn by the Commission therefrom, support the Commission's finding of fact that claimant was not medically permitted to return to work at the time LKQ began its vocational rehabilitation efforts. This evidence, including the July 22, 2021 letter, further supports the Commission's finding of fact that LKQ sought to "begin job search services" for claimant even though he was not permitted to return to work. Consequently, we hold that the Commission did not err in holding that claimant did not unjustifiably refuse vocational rehabilitation services. *See Jeffreys*, 297 Va. at 87.[3]

### III. CONCLUSION

In short, LKQ has provided no evidence in the record that is before us on appeal that shows that claimant is no longer totally disabled. LKQ, which was the moving party before the Commission and is now the appellant before this Court, bore the burden to show that claimant was no longer entitled to disability benefits, but did not provide such medical evidence in the record, and even acknowledged that "at the time vocational rehabilitation efforts were commenced, [claimant] did not have medical authorization to return to work." Consequently, we must conclude (as did the Commission) that claimant is still totally disabled. Furthermore, even though LKQ contends that it merely offered a vocational assessment that is appropriate for a totally disabled claimant, we hold that the Commission did not err in rejecting LKQ's claim that it merely offered a vocational assessment because LKQ actually asked the totally disabled claimant, who had not been medically released to return to work, to work with LKQ's job search efforts for him. LKQ asked claimant to do much more than be assessed for what he was able to do; rather, LKQ also asked claimant to involve himself with job interviews and job applications,

---

[3] LKQ's second assignment of error argued that the Commission erred in reinstating claimant's temporary total disability benefits. This argument relies on the premise that claimant unjustifiably refused vocational rehabilitation, and for the reasons stated *supra*, this premise is incorrect. Consequently, LKQ's second assignment of error also necessarily fails.

compile 10-15 years of job history, and engage in a job search process—even though, according to the record before us, claimant was still totally disabled as he had not been medically released to return to work. The Commission did not err in finding that these requests in their totality go beyond a mere assessment. Consequently, for all these reasons, we do not disturb the decision of the Workers' Compensation Commission.

*Affirmed.*