COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Felton, Judge Elder and Senior Judge Bumgardner
Argued at Alexandria, Virginia


CVS VIRGINIA DISTRIBUTION INC.,
  CVS CAREMARK CORP. AND
  GAB ROBINS RISK MGMT. SERV., INC.
                                                    MEMORANDUM OPINION[*] BY
v.      Record No. 2221-10-4                        JUDGE LARRY G. ELDER
                                                       MAY 17, 2011
EVELYN SUZETTE THOMPSON


                 FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

             Michael P. Del Bueno (Corey R. Pollard; Whitt & Del Bueno, P.C.,
             on brief), for appellants.

             W. Geovanni Munoz (The Chandler Law Group, on brief), for
             appellee.


        CVS Virginia Distribution, Inc. (employer), appeals from a decision of the Workers'

Compensation Commission (commission) holding that employer was responsible for the

continuing medical treatment of Evelyn Suzette Thompson (claimant) relating to her lumbar

facet joint syndrome.  On appeal, employer argues the commission erred in finding that

claimant's lumbar facet joint syndrome was causally related to the compensable injury claimant

sustained on February 12, 2008.  Because the medical evidence and the testimony of claimant's

treating physician establish the causal connection between claimant's compensable injury and

her treatment for lumbar facet joint syndrome, we affirm the commission's decision.

---

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

I.

BACKGROUND

We view the evidence in the light most favorable to claimant, who prevailed below.  See Westmoreland Coal v. Russell, 31 Va. App. 16, 20, 520 S.E.2d 839, 841 (1999).  So viewed, the evidence shows that claimant, age thirty-one, worked for employer in its distribution center as a "loose picker."  She picked up the correct number of individual items on a list, going down an aisle as though a store, and placed them into a tote.  On February 12, 2008, claimant sustained a compensable injury when she fell down icy steps.  After claimant returned to work on light duty, employer could not accommodate her restrictions.  Following a hearing, a deputy commissioner awarded claimant medical benefits and temporary total disability compensation from February 15, 2008 through February 27, 2008 and from March 17, 2008 through April 30, 2008, and temporary partial disability compensation from May 1, 2008 through July 16, 2008.

Thereafter, on August 12, 2009, claimant sought payment of specific medical bills from Orthopedic Specialty Clinic dated in 2008 and 2009.[1]  Employer defended on the ground that the treatments after June 2008 were not causally related to the February 12, 2008 injury by accident.

The deputy commissioner found that claimant's lumbar facet joint syndrome was not causally related to her February 2008 injury, citing the reticent responses from claimant's attending physician during his deposition testimony and relying on the opinion of another physician that claimant should have recovered within six to eight weeks from her compensable injury.  The commission reversed the deputy commissioner's denial of medical benefits and found that employer was responsible for claimant's medical treatment.  This appeal followed.

---

[1] In addition, claimant sought permanent partial disability benefits based upon a fifteen percent impairment rating to her right lower extremity and filed a change-in-condition claim that sought temporary total disability compensation beginning June 2, 2009 and continuing.  The commission denied these claims, and claimant does not challenge the commission's rulings.

- 2 -

II.

ANALYSIS

Employer argues no credible evidence supports the commission's conclusion that claimant's lumbar facet joint syndrome was causally related to her February 12, 2008 work accident. Specifically, employer contends the commission erred as a matter of law by relying on the expert testimony of claimant's treating physician, Dr. Devashish Sen, and not the expert opinion of Dr. Michael O'Brien.

To receive an award of medical benefits under Code § 65.2-603(A)(1), the evidence must "support a finding of causal relation between the accidental injury and the [medical] treatment." Watkins v. Halco Eng'g, Inc., 225 Va. 97, 101, 300 S.E.2d 761, 763 (1983). The claimant bears the burden of proving this causal relation by a preponderance of the evidence. Hoffman v. Carter, 50 Va. App. 199, 214, 648 S.E.2d 318, 326 (2007). In other words, "for the disability [and its attendant medical treatments] to be compensable, it must be more probable than not that [the accident] was caused by the work-related factor." Duffy v. Commonwealth ex rel. Dep't of State Police, 22 Va. App. 245, 251, 468 S.E.2d 702, 705 (1996).

Typically, a claimant establishes causation through the testimony of an attending physician or the claimant herself. See Farmington Country Club, Inc. v. Marshall, 47 Va. App. 15, 26, 622 S.E.2d 233, 239 (2005) ("Causation of a medical condition may be proved by either direct or circumstantial evidence, including medical evidence or 'the testimony of a claimant.'" (quoting Dollar Gen. Store v. Cridlin, 22 Va. App. 171, 176, 468 S.E.2d 152, 154 (1996))). The commission's determination of causation is a finding of fact. See Henrico Cnty Sch. Bd. v. Etter, 36 Va. App. 437, 443, 552 S.E.2d 372, 375 (2001); Marcus v. Arlington Cnty Bd. of Supers., 15 Va. App. 544, 551, 425 S.E.2d 525, 530 (1993). "The commission's factual findings . . . are conclusive and binding on this Court if supported by credible evidence." R.G. Moore

Bldg. Corp. v. Mullins, 10 Va. App. 211, 213, 390 S.E.2d 788, 789 (1990). "The fact that there is contrary evidence in the record is of no consequence if there is credible evidence to support the commission's finding." Wagner Enters, Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991).

The record contains ample evidence supporting the commission's conclusion that claimant's lumbar facet joint syndrome was caused by her February 12, 2008 injury. When claimant came to Dr. Sen on March 18, 2008, she indicated that she had pain on the right side of her lower back that radiated into her right leg. An EMG/nerve conduction test showed abnormal reduced results in the right peroneous long muscle, indicating that a nerve had been irritated by something other than a disc desiccation. Dr. Sen initially diagnosed claimant with lumbosacral radiculopathy and recommended claimant undergo epidural steroid injections to treat the inflamed nerves. On August 27, 2008, Dr. Sen modified his treatment of claimant's pain because she was receiving no relief from the epidural steroid injections and the MRI results did not provide any explanation for the pain.[2] Dr. Sen recommended claimant undergo facet joint injections, and claimant reported thirty percent relief from the pain in her lower back and legs after the first injection. This led Dr. Sen to diagnose claimant with lumbar facet joint syndrome.

According to Dr. Sen, facet joint inflammation is caused by either arthritis or an accident similar to a whiplash injury from a car accident. Dr. Sen confirmed that a fall down stairs emulated the type of whiplash injury typically associated with lumbar facet joint syndrome. Because claimant experienced no symptoms of lumbar facet joint syndrome prior to her fall and a review of her medical history revealed "[n]othing significant," including no history of arthritis,

---

[2] On March 7, 2008, claimant underwent an MRI that showed disc desiccation, a broad based central and slightly left paracentral herniated disc in claimant's lower spine, and an annular tear. Dr. Sen opined that because the desiccation was on claimant's left side, it could not account for claimant's right lower back and right leg pain.

Dr. Sen concluded that claimant's ongoing right-sided pain was "probabl[y] . . . related to her fall." Accordingly, evidence in the record supports the commission's finding that claimant's lumbar facet joint syndrome and treatment were casually related to her compensable injury.

Employer nevertheless contends Dr. Sen's testimony is inherently incredible because he "repeatedly refused to state that [claimant's] alleged disability was more probably than not causally related to her work accident." Employer further argues the medical evidence does not support Dr. Sen's expert opinion because the MRI results did not show any abnormalities in claimant's facet joints, and claimant's pain became worse with each subsequent injection. In light of the conflicting medical evidence, employer reasons that the commission was required to disregard Dr. Sen's testimony in its entirety. We disagree.

> The general rule is that when an attending physician is positive in his diagnosis of a disease, great weight will be given by the courts to his opinion. However, when it appears . . . there is medical expert opinion contrary to the opinion of the attending physician, then the trier of the fact is left free to adopt that view which is most consistent with reason and justice.

McPeek v. P.W. & W. Coal Co., Inc., 210 Va. 185, 188, 169 S.E.2d 443, 445 (1969). "[I]t is for the [c]ommission to determine the probative weight to be accorded [conflicting] evidence." Pilot Freight Carriers, Inc. v. Reeves, 1 Va. App. 435, 439, 339 S.E.2d 570, 572 (1986). "Thus, the commission's 'finding upon conflicting medical evidence that a certain condition does or does not exist is . . . a conclusive finding of fact.'" Georgia-Pacific Corp. v. Robinson, 32 Va. App. 1, 5, 526 S.E.2d 267, 268 (2000) (quoting McPeek, 210 Va. at 188, 169 S.E.2d at 445).

Applying these principles to the case at hand, we conclude the commission relied on Dr. Sen's testimony to establish causation and reconciled any internal conflicts in favor of claimant. When asked whether claimant's lumbar facet joint syndrome was "[m]ore probable than not, or just probabl[y]" related to her compensable injury, Dr. Sen stated, "I would just say probable, because she did not have any symptoms prior to that." Although Dr. Sen's reticent

- 5 -

answers may not have elevated his expert opinion to the level of medical certainty, he later clarified in a questionnaire answer that by "probable" at his deposition, he meant "51% or greater." "A doctor's statement that a certain condition is *probably* connected to the injury means there is a reasonable likelihood of causation, which 'is sufficient to permit a trier of fact to accord the statement probative weight.'" Marriot Int'l, Inc. v. Carter, 34 Va. App. 209, 215, 539 S.E.2d 738, 741 (2001) (emphasis added) (quoting Cook v. City of Waynesboro Police Dep't, 225 Va. 23, 30, 300 S.E.2d 746, 749 (1983)); see, e.g., Etter, 36 Va. App. at 445, 552 S.E.2d at 375 (permitting the claimant's attending physician to give numerous conflicting opinions regarding causation because "the commission, as fact finder, was entitled to determine the weight, meaning, and credibility to give his respective responses and statements and to reconcile any possible conflicts therein"); Turcios v. Holiday Inn Fair Oaks, 24 Va. App. 509, 517, 483 S.E.2d 502, 506 (1997) (finding no reversible error where the commission relied on the attending physician's medical opinion to establish causation even though he "never used the words, 'I find a causal connection'").

In any event, Dr. Sen's testimony accounted for any discrepancies between his diagnosis and the medical evidence. Despite repeated facet joint injections, claimant reported that her pain had returned. However, Dr. Sen testified that the results from facet joint injections could vary with each treatment, so it was possible for claimant to experience relief from one injection yet have increased pain from a subsequent injection. And even though the results from the MRI tests showed no abnormality on the right side of claimant's body,[3] Dr. Sen explained that facet joint inflammation rarely is visible on an MRI. Thus, Dr. Sen relied on his clinical observations of claimant's "tenderness in her right-sided lumbar facets" and her right-sided pain to conclude

---

[3] Claimant underwent a second MRI on July 10, 2009. Dr. Sen reviewed the MRI report and concluded no significant differences existed between the two MRI results.

that the pain stemmed from inflammation in her facet joints. The commission "evaluated the conflicting medical evidence" and resolved the "internal[] inconsisten[cies]" in claimant's favor. Clinch Valley Med. Ctr. v. Hayes, 34 Va. App. 183, 192, 538 S.E.2d 369, 373 (2000).

This same reasoning compels us to reject employer's argument that the commission erroneously failed to rely on the expert medical opinions of Dr. O'Brien. [4] See Dep't of State Police v. Taubert, 1 Va. App. 250, 253, 337 S.E.2d 307, 308 (1985) ("A finding based upon conflicting medical opinions is one of fact [that] cannot be disturbed."). On October 12, 2009, Dr. O'Brien reviewed medical records provided by counsel for the employer. Based on his review of claimant's MRI records, Dr. O'Brien opined "with a reasonable degree of medical certainty that [claimant] suffered a minor low back strain" and should have recovered "within six to eight weeks at the most." Dr. O'Brien "disagree[d] completely with Dr. Sen's opinion that [claimant] require[d] multilevel injections and chronic narcotics to treat her injury." Dr. O'Brien's report amounts to nothing more than a medical opinion that conflicted with the conclusions of Dr. Sen, and we are unable to second-guess the commission's reliance on one medical expert over another. Indeed, Dr. Sen relied on his clinical observations of the tenderness near claimant's facet joints and claimant's initial reaction to the facet joint injections to conclude claimant suffered from lumbar facet joint syndrome. Dr. O'Brien relied solely on a review of claimant's medical reports and did not have this same opportunity to examine and treat claimant. Accordingly, "[h]aving resolved the conflict in favor of [claimant] on the basis of credible evidence, the finding by the [c]ommission is binding on this Court on appeal." Reeves, 1 Va. App. at 439, 339 S.E.2d at 572; see Herbert Clements & Sons, Inc. v. Harris, 52 Va. App.

---

[4] Employer further argues that Dr. Kirchmier's expert opinion conflicts with Dr. Sen's opinion. However, Dr. Kirchmier's medical opinion extended only to the conclusion that claimant's pain was not discogenic. Dr. Sen arrived at the same conclusion when he modified claimant's treatment to facet joint injections.

447, 453, 456, 663 S.E.2d 564, 568-69 (2008) (affirming the commission's finding of causation despite the conflicting medical opinion of a doctor who "could [not] substantiate a disability from a work-related injury").

## III.

## ATTORNEY'S FEES AND COSTS

Claimant requests an award of attorney's fees and costs incurred in the course of this appeal.[5] Code § 65.2-713(A) grants this Court the authority to assess against employer the costs of these proceedings including "a reasonable attorney's fee," if we determine these "proceedings have been brought, prosecuted, or defended without reasonable grounds." See, e.g., Lowes of Short Pump Va. v. Campbell, 38 Va. App. 55, 62, 561 S.E.2d 757, 760 (2002). Although employer has not prevailed on appeal, it brought this appeal with reasonable grounds, and we decline to award claimant attorney's fees and costs.

## IV.

## CONCLUSION

For these reasons, we affirm the commission's determination that employer is responsible for claimant's medical treatment for her lumbar facet joint syndrome. Claimant's request for appellate attorney's fees is denied.

Affirmed.

---

[5] Claimant makes this request under Rule 5A:30; however, Code § 65.2-713 is the proper mechanism on which to base a request for attorney's fees incurred on an appeal from the commission.